UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RICHARD R. RENSHAW, III,       )
                               )
    Plaintiff,                 )
                               )
    v.                         )   Case No. 4:16-CV-1467 NAB
                               )
NANCY A. BERRYHILL,            )
Acting Commissioner of Social Security, )
                               )
    Defendant.                 )

# MEMORANDUM AND ORDER

This matter is before the Court on Richard R. Renshaw, III's (Renshaw) appeal regarding the denial of disability insurance benefits and supplemental security income under the Social Security Act. Renshaw alleged disability due to learning disabilities, attention deficit disorder, attention deficit hyperactivity disorder, bipolar disorder, depression, memory problems, and hepatitis. (Tr. 321.) The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 10.] The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. The court held a hearing by telephone on August 24, 2017. Based on the following, the Court will reverse the Commissioner's decision and remand this action for further proceedings.

## I.  Issues for Review

Renshaw presents three issues for review. First, he asserts that his due process rights were violated, because he was denied the right to testify before the ALJ who wrote the final decision in his case and the error was prejudicial. Second, he contends that the hypothetical

question to the vocational expert and the residual functional capacity findings were unclear and internally inconsistent. Finally, he asserts that the ALJ relied upon a vocational expert opinion that lacked a basis and conflicted with the Dictionary of Titles (DOT)[1] without resolution. The Commissioner contends that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## II. Background

On August 24, 2012, Renshaw applied for a period of disability, disability insurance benefits, and supplemental security income, alleging disability since December 31, 2010. (Tr. 293-305.) The Social Security Administration ("SSA") denied Renshaw's claim and he filed a timely request for hearing before an administrative law judge ("ALJ"). (Tr. 110-36, 139-40.) The SSA granted Renshaw's request for review and an administrative hearing was held on June 18, 2014 before ALJ Joseph Warzycki. (Tr. 58-109.) Medical experts Jerry Seligman and Dr. Karyn Perry, vocational expert Matthew Lampley, Renshaw's case manager Joseph Piskulic, and Renshaw testified at the June 18, 2014 hearing [2]. A second administrative hearing was held before ALJ Warzycki on December 17, 2014. (Tr. 45-57.) During the December 2014 hearing, medical expert Dr. Lee Besen and Renshaw testified. (Tr. 45-57.) Dr. Besen testified that Renshaw's psychological issues would be "further reviewed by a psychiatrist/psychologist." (Tr. 51.) At the conclusion of all of the testimony, ALJ Warzycki stated, "Well unfortunately, they gave me an internal med instead of a psychologist. So we will lay this over for a psychologist." (Tr. 56.)

---

[1] The Dictionary of Occupational Titles ("DOT") is a guide from the United States Department of Labor regarding job ability levels that has been approved for use in Social Security cases. *See Fines v. Apfel*, 149 F.3d 893, 895 (8th Cir. 1998) (citing 20 C.F.R. § 404.1566(d)(1)); *Porch v. Chater,* 115 F.3d 567, 571 (8th Cir.1997)). "The DOT is the Commissioner's primary source of reliable job information. The Commissioner uses the DOT to classify occupations as skilled, semiskilled or unskilled." *Fines*, 149 F.3d at 895 (internal citations omitted).

[2] Dr. Seligman, Dr. Perry, and Dr. Piskulic's names are misspelled in the administrative hearing transcript.

2

Between the second administrative hearing and the Commissioner's decision on this case, ALJ Warzycki retired and the case was transferred to ALJ Lisa Leslie. (Tr. 388.) On May 18, 2015, ALJ Leslie found Renshaw not disabled as defined in the Society Security Act. (Tr. 25-39.) Renshaw was not informed that a third hearing would not be held or that a different ALJ had been assigned to write the decision in his case. The ALJ's opinion also does not mention that another ALJ received testimony in the case. Renshaw requested a review of the ALJ's decision from the Appeals Council. (Tr. 14, 16.) Renshaw's counsel also submitted a brief in support of the request for review asserting the same claims that are before this court. (Tr. 388-90.)

On July 19, 2016, the Appeals Council of the Social Security Administration denied Renshaw's request for review. (Tr. 1–6.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000); *Lott v. Colvin*, 772 F.3d 546, 548 (8th Cir. 2014). Renshaw filed this appeal on September 16, 2016. [Doc 1.] The Commissioner filed an Answer and the certified Administrative Transcript on November 22, 2016. [Doc. 13, 14.] Renshaw filed a Brief in Support of the Complaint on January 26, 2017[3]. [Doc. 27] The Commissioner filed a Brief in Support of the Answer on April 21, 2017. [Doc. 23.] Renshaw then filed a Reply Brief on May 5, 2017. [Doc. 24.]

### III. Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)1)A), 423(d)1)(A).

---

[3] The Court granted Plaintiff's request to file an overlength Brief on January 26, 2017, but the actual Brief and exhibits were not separately entered in the Court record until August 23, 2017.

The SSA uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's Residual Functional Capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The court

determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 726 (8th Cir. 2004).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physician;

(4) The subjective complaints of pain and description of the claimant's physical impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand. V. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

## IV. Discussion

### A. Due process

Renshaw asserts that his due process rights were violated when his case was reassigned to a new ALJ after the administrative hearings were held without notice to him and the new ALJ issued a decision significantly discounting his credibility without another hearing. The new ALJ also did not acknowledge the change in ALJs or the failure to hold a subsequent hearing in the decision.

"The Due Process Clause of the Fifth Amendment requires that before property can be taken, notice and opportunity for a hearing be provided." *Wilburn v. Astrue*, 626 F.3d 999, 1002 (8th Cir. 2010) (citing *Baldwin v. Credit Based Asset Servicing and Securitization*, 516 F.3d 734, 737 (8th Cir. 2008)). The Court assumes that the due process clause applies to the denial of Renshaw's benefits.[4] Procedural due process under the Fifth Amendment requires that disability claimants be provided a full and fair hearing. *Hurd v. Astrue*, 621 F.3d 734, 739 (8th Cir. 2010). "Social security disability hearings are non-adversarial proceedings and therefore do not require full courtroom procedures." *Hepp*, 511 F.3d at 804. "Adequate notice is that which is reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Wilburn*, 626 F.3d at 1003. "Due process is a flexible concept and a determination of what process is due, or what notice is adequate depends upon the particular circumstances involved." *Id.* at 1003. "A change in personnel occurring during the course or at the close of an administrative hearing does not as

---

[4] The U.S. Supreme Court has held that a person receiving benefits has a property interest in the continued receipt of benefits. *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Neither the U.S. Supreme Court nor the 8th Circuit has decided whether a social security disability applicant has a protected property interest in benefits that he or she seeks to receive, but they have assumed so without deciding. *See Richardson v. Perales*, 402 U.S. 389, 401-402 (1971), *Hepp v. Astrue*, 511 F.3d 798, 804, n. 5 (8th Cir. 2008).

6

such give rise to constitutional repugnance in a decision or order made by the administrative tribunal on the basis of the previous hearing." *Id.* Where a claimant does not object to or appeal the substitution of personnel before the Appeals Council and is not prejudiced by the substitution, a due process violation cannot be found. *Id.* at 1003-4.

HALLEX provides procedural guidance for processing and adjudicating claims at the hearing and Appeals Council level. The Eighth Circuit has not specifically ruled on the effect of a violation of HALLEX and it does not have the force of law in this circuit. *Ellis v. Astrue*, No. 4:07-CV-1031 AGF, 2008 WL 4449452 at *15-16 (E.D. Mo. Sept. 25, 2008). The HALLEX regulations provide that an ALJ has discretion whether to hold subsequent hearings in a reassigned case. *See* HALLEX I-2-8-40, 1993 WL 643064(B). (If the ALJ intends to issue a less than fully favorable decision based on the information before him or her, or the ALJ requires more information to make a decision, the ALJ will assess if another hearing is necessary).

Based on a review of the evidence in the record as a whole, the Court will reverse the Commissioner's final decision and remand this action. Although finding a due process violation or remanding for a credibility determination is rare, such a finding is required in this case. Because the credibility issue was case determinative, Renshaw was prejudiced by the ALJ's failure to hold a subsequent administrative hearing with a medical expert or another consultative examination and the lack of an opportunity to testify before the ALJ. In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

> (1) The claimant's daily activities;
>
> (2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

7

> (3) Any precipitating or aggravating factors;
>
> (4) The dosage, effectiveness, and side effects of any medication; and
>
> (5) The claimant's functional restrictions.

*Polaski v. Heckler*, 725 F.2d 1320, 1322 (8th Cir. 1984). It is not enough that the record contains inconsistencies; the ALJ is required to specifically express that he or she considered all of the evidence. *Id.* Although an ALJ may not discredit a claimant's subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006). The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988).

In their briefing and at oral argument, the parties agree that Renshaw's eligibility for disability benefits turns on the severity of his mental impairments. Renshaw's doctors diagnosed him with learning disabilities, borderline intellectual functioning, ADHD, Hepatitis C, atopic dermatitis, gastroesophageal disorder, obesity, affective disorder, anxiety disorder, and substance addiction disorder. The ALJ only found his affective disorder, anxiety disorder, and substance addiction disorder as severe impairments. (Tr. 28-29.) The ALJ's written opinion focuses substantially on discounting Renshaw's credibility regarding his mental impairments based on his testimony at the administrative hearings. (Tr. 32-37.) The ALJ wrote "There were

inconsistencies in the record that tended to diminish the credibility of the claimant's testimony." (Tr. 32.) The ALJ also discredited the testimony of Renshaw's current case manager in favor of third party function report completed by a former case manager. (Tr. 37.) Although, the ALJ noted that certain evidence "generally supported" Renshaw's allegations regarding his ability to function, she then decided to give greater weight to the parts that were favorable to a finding of non-disability. (Tr. 32-37.)

For example, the ALJ goes to great lengths to discount Renshaw's testimony that he had a panic attack before his consultative examination with Dr. Lenora Brown. In his testimony Renshaw describes having a panic attack before his meeting with Dr. Brown, because he was very late to the appointment and then was unable to complete the paperwork provided by her staff. He stated that he was "in a full blown panic attack, and I was just balling and couldn't breath[e]." (Tr. 53.) Renshaw testified that Dr. Brown gave him a glass of water and he calmed down. (Tr. 53.) In her report, Dr. Brown wrote that Renshaw was a "fair to poor informant" and "extremely nervous." (Tr. 674.) She also wrote that "he was nervous and his leg was shaking" and "at times his thoughts were somewhat rambling." (Tr. 676.) She stated that his "Affect was nervous. Mood was reported as 'hyper and still upset about getting lost coming over here.'" Unlike the ALJ's characterization, however, Renshaw's description of the incident was not contradicted by Dr. Brown's notes. Most of the activity regarding Renshaw's reaction to being late and completing the paperwork occurred before Dr. Brown saw him. Moreover, it was not necessary for Dr. Brown to use the term "full blown panic attack" to describe Renshaw's anxiety about getting lost to make his claim that he had a panic attack credible. Her notes regarding his demeanor and behavior support his testimony.

Next, the ALJ discounted Renshaw's credibility because he missed an appointment and failed to fill one prescription. (Tr. 32, 525, 608.) The ALJ referred to a therapist's note that stated that Renshaw was willing to follow therapy sessions to manage his symptoms and would be more attentive to taking his medication. (Tr. 32, 601.) The ALJ inferred that "this supports a finding that the claimant had not been attentive in the past." (Tr. 32-33.) Because the second ALJ did not question Renshaw at the administrative hearing and discredited him for these reasons, Renshaw suffered prejudice. When evaluating a claim, the SSA considers "an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities …." SSR 16-3p, 2016 WL 1119029 at*8 (Mar. 16, 2016) (supersedes SSR 96-7p and removes the term credibility). The SSA ruling also states

> In contrast, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

SSR 16-3p at *8[5]. Renshaw testified that he was compliant with his medication, but his caseworkers helped him with appointments, because he doesn't want to get out of bed

---

[5] The language in SSR 16-3p is similar to the language in SSR 96-7p in effect at the time of the ALJ's ruling regarding considering the reasons why claimant may have inconsistent medical treatment and how the ALJ could address the discrepancies with the claimant. *See* SSR 96-7p, 1996 WL 374186 at *7-8 (The adjudicator may need to

sometimes. (Tr. 94, 96-97.) "[F]ederal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and is usually, the result of the mental impairment itself, and therefore, neither willful nor without justifiable excuse." *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009). Renshaw's testimony indicates that his mental impairments and intellectual disability require the assistance of his caseworkers for medication management and completing his social security paperwork. The testimony of Renshaw's case worker supported Renshaw's testimony. (Tr. 103-104.)

Next, the ALJ carefully parsed Renshaw's testimony and his statements to providers about the exact dates of his substance abuse through the years. Considering that it is well established that Renshaw has had mental health impairments and substance abuse problems during a significant part of his life and he alleges memory problems, it would not be unexpected that his statements to providers may not exactly match his actual dates of sobriety or drug use. Dr. Brown noted that Renshaw was a "fair to poor informant." (Tr. 674.) "An ALJ may discount a claimant's allegations if there is evidence that a claimant was a malingerer or was exaggerating symptoms for financial gain." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). There is no evidence in the record that Renshaw was accused by any provider of malingering.

The Court emphasizes that there was no error in the act of reassigning Renshaw's claim. The Commissioner is also correct that the ALJ was not required to notify Renshaw or his counsel that the case was reassigned and that a third administrative hearing would not take place, although a good practice would be to acknowledge it in the ALJ's opinion. As described above, however, Renshaw was prejudiced because the credibility findings provided were the focus of

---

recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner).

the ALJ's ultimate finding that Renshaw was not disabled. *Cf. Wilburn*, 626 F.3d at 1003-1004 (claimant unable to show prejudice due to credibility finding). Therefore, the Court will reverse and remand this action to re-examine Plaintiff's credibility and obtain a mental consultative examination or medical expert testimony regarding Plaintiff's mental health impairments.

B. **Testimony of Vocational Expert**

Because the Court is reversing and remanding this matter for further proceedings, the Court will not address Renshaw's arguments regarding the vocational expert testimony.

V. **Conclusion**

The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after addressing the deficiencies noted herein, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings). Because Renshaw first applied for benefits in 2012 and it is now 2017, the Commissioner is urged to begin proceedings without delay and resolve this case as soon as possible.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Plaintiff seeks in his Complaint and Brief in Support of Plaintiff's Complaint is **GRANTED in part and DENIED in part**. [Docs. 1, 24, 27.]

**IT IS FURTHER ORDERED** that the Commissioner's decision of May 18, 2015 is **REVERSED** and **REMANDED** to re-examine Plaintiff's credibility and obtain a mental

consultative examination or medical expert testimony regarding Plaintiff's mental health impairments.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

Dated this 21st day of September, 2017.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE